UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARTIN ROBLES, | § | |
| | § | |
|     Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. C-07-261 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| | § | |
|     Respondent. | § | |

## MEMORANDUM AND ORDER

This case is before the Court on Petitioner Martin Robles's Petition for Writ of Habeas Corpus (Document No. 1), and Respondent Nathaniel Quarterman's Motion for Summary Judgment (Document No. 7). Having carefully considered the Petition, the Summary Judgment Motion, and the arguments and authorities submitted by counsel, the Court is of the opinion that Quarterman's Motion For Summary Judgment should be GRANTED, and Robles's Petition For Writ Of Habeas Corpus should be DENIED.

I.    Background

Robles and an accomplice illegally entered a home while the occupants were asleep and shot and killed Jesus Gonzalez and John Commisky. Robles was convicted of capital murder and sentenced to death in Nueces County, Texas. The Texas Court of Criminal Appeals ("TCCA") denied relief both on Robles's direct appeal, *see Robles v. State*, No. 74,726, 2006 WL 1096971 (Tex.Crim.App. Apr. 26, 2006), and application for a writ of habeas corpus, *see Ex Parte Robles*, No. 63,634-01 (Tex.Crim.App. June 14, 2006) (*per curiam*). On June 11, 2007, Robles filed this federal petition for a writ of habeas corpus.

II.   The Applicable Legal Standards

     A.   The Antiterrorism and Effective Death Penalty Act

This federal petition for habeas relief is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320, 335-36 (1997).  Under the AEDPA, federal habeas relief based upon claims that were adjudicated on the merits by the state courts cannot be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d);*Kitchens v. Johnson*, 190 F.3d 698, 700 (5th Cir. 1999).

For questions of law or mixed questions of law and fact adjudicated on the merits in state court, this court may grant federal habeas relief under 28 U.S.C. § 2254(d)(1) only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent]."  *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 534 U.S. 885 (2001).  Under the "contrary to" clause, this court may afford habeas relief only if "'the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.'" *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000), *cert. denied*, 532 U.S. 915 (2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)).

The "unreasonable application" standard permits federal habeas relief only if a state court decision "identifies the correct governing legal rule from [the Supreme Court] cases but

unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 406.  "In applying this standard, we must decide (1) what was the decision of the state courts with regard to the questions before us and (2) whether there is any established federal law, as explicated by the Supreme Court, with which the state court decision conflicts." *Hoover v. Johnson*, 193 F.3d 366, 368 (5th Cir. 1999).  A federal court's "focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence." *Neal v. Puckett*, 239 F.3d 683, 696 (5th Cir. 2001), *aff'd*, 286 F.3d 230 (5th Cir. 2002) (en banc), *cert. denied sub nom. Neal v. Epps*, 537 U.S. 1104 (2003).  The solitary inquiry for a federal court under the 'unreasonable application' prong becomes "whether the state court's determination is 'at least minimally consistent with the facts and circumstances of the case.'" *Id.* (quoting *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997)); *see also Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001) ("Even though we cannot reverse a decision merely because we would reach a different outcome, we must reverse when we conclude that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'").

The AEDPA precludes federal habeas relief on factual issues unless the state court's adjudication of the merits was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254 (d)(2); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  The state court's factual

determinations are presumed correct unless rebutted by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Jackson v. Anderson*, 112 F.3d 823, 824-25 (5th Cir. 1997), *cert. denied*, 522 U.S. 1119 (1998).

B.    The Standard for Summary Judgment in Habeas Corpus Cases

"As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir.), *cert. denied*, 531 U.S. 831 (2000).  Insofar as they are consistent with established habeas practice and procedure, the Federal Rules of Civil Procedure apply to habeas cases. *See* Rule 11 of the Rules Governing Section 2254 Cases.  In ordinary civil cases, a district court considering a motion for summary judgment is required to construe the facts in the case in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986) (The "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor").  Where, however, a state prisoner's factual allegations have been adversely resolved by express or implicit findings of the state courts, and the prisoner fails to demonstrate by clear and convincing evidence that the presumption of correctness established by 28 U.S.C. § 2254(e)(1) should not apply, it is inappropriate for the facts of a case to be resolved in the petitioner's favor. *See Marshall v. Lonberger*, 459 U.S. 422, 432 (1983); *Sumner v. Mata*, 449 U.S. 539, 547 (1981).  In reviewing factual determinations of the Texas state courts, this court is bound by such findings unless an exception to 28 U.S.C. § 2254 is shown.

III.    <u>Analysis</u>

A.    <u>Constitutionality Of The Texas Death Penalty</u>    In his first claim for relief, Robles contends that the administration of the death penalty in Texas violates the Eighth and Fourteenth Amendments.

Robles raised this claim in his state postconviction petition.  The TCCA found the claim procedurally defaulted because Robles did not raise it on direct appeal.  SH. at 75.[1]

"When a state court declines to hear a prisoner's federal claims because the prisoner failed to fulfill a state procedural requirement, federal habeas is generally barred if the state procedural rule is independent and adequate to support the judgment."  *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001).  The Supreme Court has noted that

> [i]n all cases in which a state prisoner had defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  "This doctrine ensures that federal courts give proper respect to state procedural rules."  *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997) (citing *Coleman*, 501 U.S. at 750-51), *cert. denied*, 523 U.S. 1125 (1998); *see also Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (finding the cause and prejudice standard to be "grounded in concerns of comity and federalism").  Robles does not show cause for his default, nor does he argue that a fundamental miscarriage of justice will result if this Court does not address his claim.  Therefore, this claim is procedurally defaulted.

B.    <u>The Mitigation Special Issue</u>

---

[1]    "SH" refers to the transcript of Robles's state habeas corpus proceeding.

In his second and third claims for relief, Robles contends that the jury charge on the mitigation special issue violated his constitutional rights.

1.   <u>Grammatical Errors In The Charge</u>

In his second claim Robles argues that grammatical errors in the jury charge concerning the mitigation special issue rendered the special issue inadequate as a vehicle for the jury to give effect to mitigating evidence.   In *Lockett v. Ohio*, 438 U.S. 586, 608 (1978), a plurality of the Supreme Court held "that the Eighth and Fourteenth Amendments require that the sentencer . . . not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record . . . as a basis for a sentence less than death."   438 U.S. at 604 (emphasis in original). This holding is based on the plurality's conclusion that death "is so profoundly different from all other penalties" as to render "an individualized decision . . . essential in capital cases."   *Id.* at 605.   In *Penry v. Johnson*, 532 U.S. 782 (2001), the Supreme Court clarified that a capital sentencing jury must "be able to consider and *give effect to* a defendant's mitigating evidence in imposing sentence."   *Id.* at 797 (internal quotation marks, citation and brackets omitted).

In this case, the trial court instructed the jury:

> You shall consider all evidence admitted at the guilt or innocence stage and the punishment stage, including evidence of the defendant's background or character or the circumstances of the offense that militates for or mitigates against the imposition of the death penalty.

Robles points out that the phrase "mitigates against the imposition of the death penalty" is grammatically incorrect.   He argues that it creates confusion among the jurors, preventing them from giving effect to mitigating evidence.

In *Tuilaepa v. California*, 512 U.S. 967 (1994), the Supreme Court held that a statute is not unconstitutionally vague if the challenged term has "some 'common sense core of meaning .

. . that criminal juries should be capable of understanding.'"  *Id.* at 975 (quoting *Jurek v. Texas*, 428 U.S. 262, 279 (1976)).   While Robles is technically correct that the phrase "mitigates against" is incorrect, and that "mitigates" should not be followed by "against," his contention that the phrase is confusing or lacks a core meaning is incorrect based on common usage.   The Merriam-Webster Online Dictionary notes that

> *Mitigate* is sometimes used as an intransitive (followed by *against*) where *militate* might be expected. Even though Faulkner used it <some intangible and invisible social force that *mitigates* against him -- William Faulkner> and one critic thinks it should be called an American idiom, it is usually considered a mistake.

*See* http://www.merriam-webster.com/dictionary/mitigate.   This common, though technically incorrect, usage of the term is also illustrated by its frequent use in judicial opinions.  *See*, *e.g.*, *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 127 S.Ct. 1654, 1667 n.13 (2007); *Penry v. Lynaugh*, 492 U.S. 302, 318, 328 (1989).

Common usage makes clear that the phrase has a common sense core of meaning sufficient to pass constitutional muster.  Thus, while the jury charge violated the rules of English grammar, it did not violate Robles's constitutional rights.

### 2.  Limitations On Definition Of Mitigating Evidence

Part of the jury charge during the penalty phase instructed the jurors that:

> In deliberating on your answer to special issue three, you are instructed as follows
> . . . (3) in arriving at your answer, you shall consider mitigating evidence to be evidence that the jury might regard as reducing a defendant's moral blameworthiness.

In his third claim for relief, Robles contends that this instruction unconstitutionally limited the jury's consideration of mitigating evidence only to that which reduced his moral blameworthiness, and precluded consideration of other mitigating evidence.  Robles also notes

that the jury requested a definition of "mitigating" and the judge referred the jury to the portion of the charge quoted above.

Robles acknowledges that other portions of the jury charge instructed the jury to consider *all* the evidence to determine whether there was sufficient mitigating evidence to warrant a life sentence.  He argues, however, that because the trial court did not explicitly instruct the jury to read these portions of the charge together, there is a risk that the jury would take an unconstitutionally narrow view of mitigation evidence.

"[J]uries are presumed to follow their instructions."  *Richardson v. Marsh*, 481 U.S. 200, 211 (1987).  Robles contends that the jury's request for further definition and the trial court's referral to that portion of the charge defining mitigating evidence as evidence tending to reduce Robles's moral culpability indicates that the jury might not have followed the entire charge.  Nonetheless, the correct definition of mitigating evidence was given to the jury, and the jury is presumed to have followed its instructions.

Assuming *arguendo* that the jury did not follow the entire charge, Robles is still not entitled to relief.  "The question [on habeas corpus review] is whether the ailing instruction by itself so infected the entire trial that the resulting [sentence] violates due process."  *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (citation and internal quotation marks omitted).  The only mitigating evidence Robles presented was testimony that Robles obeyed the rules while in pretrial detention and expert testimony that no inmate had ever lived longer than 29 years in a Texas prison.  The State presented evidence of the facts of the crime, Robles's violent criminal history, and his gang membership.  In light of this evidence of Robles's future dangerousness and the fact that the jury had a complete definition of mitigation evidence in its instructions, the

jury charge, even if it was defective, did not so infect Robles's sentencing proceeding as to deny him due process.

      D.    <u>Robles's Tattoo</u>

Robles has a tattoo depicting a demon eating Christ's brain.  The State presented this tattoo as evidence of future dangerousness.  In his fourth and final claim for relief, Robles argues that placing this tattoo into evidence was an appeal to the jurors' private religious beliefs and violated Roble's First Amendment right to free exercise of religion.

In closing argument during the penalty phase, the prosecutor stated:

> you have a demon eating the brains of Christ . . . Now, I don't know what that means, but to me it's a bad thing.  That to me is a philosophy.  I don't know if it's satanic.  I don't know what in the Sam Hill it is, but if it tells you something about him as a person, that ought to tell you where his belief system is.  His conduct shows you where his belief system is.

24 Tr. at 106.[2]  On direct appeal, the TCCA distinguished two First Circuit cases cited by Robles on the grounds that those cases found references to religion during guilt/innocence proceedings unconstitutional because the defendant's character was not relevant to the question of guilt. Robles's tattoo was presented during the penalty phase, when a defendant's character might be relevant to the issue of future dangerousness.  As the prosecutor's comments, quoted above, make clear, the prosecutor argued that this tattoo reflected a violent character; he did not make any appeal to religion.

Moreover, to the extent that the prosecutor's comments could be understood as implying that Robles holds anti-Christian beliefs, such comment is permissible if it is relevant to an issue before the jury.  In *Dawson v. Delaware*, 503 U.S. 159, 165 (1992), the Supreme Court held that "the Constitution does not erect a *per se* barrier to the admission of evidence concerning one's

---

[2]      `"Tr." refers to the transcript of Robles's trial.`

beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment."  Any such evidence, however, must be relevant to the sentencing proceeding.  *Id.*  Because the tattoo constitutes evidence relevant to a material issue, *i.e.*, Robles's violent nature and the likelihood that he would commit future acts of criminal violence, the TCCA's conclusion on this claim was not unreasonable.  It is therefore entitled to deference under the AEDPA.

IV.   Certificate of Appealability

    Robles has not requested a certificate of appealability ("COA"), but this Court may determine whether he is entitled to this relief in light of the foregoing rulings.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) ("It is perfectly lawful for district court's [sic] to deny a COA *sua sponte*.  The statute does not require that a petitioner move for a COA; it merely states that an appeal may not be taken without a certificate of appealability having been issued.") A petitioner may obtain a COA either from the district court or an appellate court, but an appellate court will not consider a petitioner's request for COA until the district court has denied such a request.  *See Whitehead v. Johnson*, 157 F.3d 384, 388 (5th Cir. 1988); *see also Hill v.Johnson*, 114 F.3d 78, 82 (5th Cir. 1997) ("[T]he district court should continue to review COA requests before the court of appeals does.").  "A plain reading of the AEDPA compels the conclusion that COAs are granted on an issue-by-issue basis, thereby limiting appellate review to those issues alone."  *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997).

    A COA may issue only if the petitioner has made a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see also United States v. Kimler*, 150 F.3d 429, 431 (5th Cir. 1998).  A petitioner "makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could

resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further."  *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir.), *cert. denied*, 531 U.S. 966 (2000).  The Supreme Court has stated that

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253© is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The issue becomes somewhat more complicated where the court dismisses the petition based on procedural grounds.  Under these circumstances, a COA should issue when the prisoner shows that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *Id.*

"The nature of the penalty in a capital case is a 'proper consideration in determining whether to issue a [COA], but the severity of the penalty does not in itself suffice to warrant the automatic issuing of a certificate.'"  *Washington v. Johnson*, 90 F.3d 945, 949 (5th Cir. 1996) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)), *cert. denied*, 520 U.S. 1122 (1997). However, "the determination of whether a COA should issue must be made by viewing the petitioner's arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)."  *Barrientes v. Johnson* 221 F.3d 741, 772 (5th Cir. 2000), *cert. dismissed*, 531 U.S. 1134 (2001).

This Court has carefully considered all of Robles's claims.  While the issues Robles raises are clearly important and deserving of the closest scrutiny, the Court finds that each of these claims is foreclosed by clear, binding precedent.  This Court concludes that under such

precedents, Robles has not made a "substantial showing of the denial of a constitutional right."

28 U.S.C. § 2253(c)(2).  This Court therefore concludes that Robles is not entitled to a certificate

of appealability.

V.    Order

For the foregoing reasons, it is ORDERED as follows:

1.    Respondent Nathaniel Quarterman's Motion for Summary Judgment (Docket Entry 7) is GRANTED;

2.    Petitioner Martin Robles's Petition for Writ of Habeas Corpus (Docket Entry 1) is in all respects DENIED, and Robles's Petition is DISMISSED;

3.    No Certificate of Appealability shall issue.

The Clerk shall notify all parties and provide them with a true copy of this Order.

SIGNED and ORDERED this 6th day of March, 2009.

_____
Janis Graham Jack
United States District Judge